UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X

LAWRENCE MCCOWEN,
            Petitioner,

-against-

JAMES CONWAY, Superintendent
            Respondent.

----------------------------------------------------------------- X

07-CV-3316 (ARR)

<u>OPINION AND ORDER</u>

NOT FOR
ELECTRONIC OR PRINT
PUBLICATION

ROSS, United States District Judge:

Pro se petitioner, Lawrence McCowen, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on August 3, 2007. Petitioner was convicted in New York State court of charges of sexual abuse and sodomy in the first degree. Petitioner raises a number of grounds for habeas corpus relief, including violation of his due process and confrontation rights, as well as ineffective assistance of trial and appellate counsel. Respondent asserts, <u>inter alia</u>, that the petition should be dismissed as untimely for failure to comply with the time limits set forth in the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA").

For the reasons set forth below, the petition is dismissed as untimely.

## BACKGROUND

A Kings County jury convicted petitioner of three counts of sexual abuse and three counts of sodomy in the first degree, and other, lesser offenses. On April 10, 2001, he was sentenced to 75 years to life in prison.

Petitioner, through his first appellate lawyer, appealed his conviction and sentence to the Appellate Division, Second Department, on April 20, 2001. The appeal was denied on the merits by decision dated January 20, 2004. <u>See</u> People v. McCowan, 770 N.Y.S.2d 633 (2004). Petitioner

retained a new lawyer and, on February 5, 2004, filed an application for leave to appeal in the New York Court of Appeals. The application was denied on March 30, 2004, see People v. McCowen, 2 N.Y.2d 743 (2004), but petitioner claims that he did not receive notice of this denial until several months later, on August 5, 2004.

With the instant filings, petitioner has submitted copies of correspondence between himself and his lawyer, as well as between himself and the clerk of this court and the Clerk of the New York Court of Appeals, to substantiate the claim that he did not receive notice of the March 30, 2004 decision until August 5, 2004. These submissions show the following:

(1) By letter dated March 19, 2004, the Clerk of the New York Court of Appeals acknowledged receipt from petitioner of a letter, dated March 6, 2004, apparently inquiring as to the status of his application for leave to file an appeal. See Letter from Stuart M. Cohen dated March 19, 2004, submitted as Ex. A. to Pet.'s Mem. In that letter, the Clerk also advised petitioner that his application was still pending and that his attorney would be notified when a decision was rendered. See id.

(2) By letter dated June 9, 2004, petitioner's lawyer before the New York Court of Appeals acknowledged petitioner's inquiry as to the time that had elapsed from the filing of his application for leave, and indicated that it was his belief that the Court of Appeals was seriously considering the application because that court had not yet rejected it. See Letter from De Nice Powell dated June 9, 2004, submitted as Ex. B. to Pet's. Mem.

(3) (i) By letter dated August 5, 2004, petitioner's lawyer informed petitioner of the March 30, 2004 denial. The lawyer indicated that he had not received a copy of the denial from the Court of Appeals, but rather had learned about the denial in a conversation with the prosecutor. The lawyer also acknowledged that petitioner had made a second request for information prior to the August 5,

2004 letter. See Letter from De Nice Powell dated August 5, 2004, submitted as Ex. C. to Pet.'s Mem. (ii) In response to another letter sent by petitioner on August 23, 2004, his lawyer, by letter dated August 26, 2004, reiterated that he had not received notice of the March 30, 2004 denial until August 5, 2004. See Letter from De Nice Powell dated August 26, 2004, submitted as Ex. E. to Pet.'s Mem.

(4) By letter dated August 26, 2004, the Clerk of the New York Court of Appeals, responding to a letter from petitioner dated August 24, 2004, indicated that he did not know why petitioner's attorney did not receive the certificate denying leave. He also stated that he could not advise petitioner as to how to receive an extension of time to commence a proceeding in another court. See Letter from Stuart Cohen dated August 26, 2004, submitted as Ex. D. to Pet.'s Mem.

(5) On May 9, 2005, petitioner wrote the clerk of this court to inform the court of the substance of these exchanges, that he had submitted a post-conviction motion under New York's C.P.L. § 440.10 in New York State court, that he intended to file a petition for writ of coram nobis in New York State court and a petition for writ of habeas corpus in this court, and that he would request "the Five (5) months back to perfect [his] writ of habeas corpus," apparently referring to the approximately four month period during which he did not receive notice of the denial of his application for leave. See Letter from Lawrence McCowen dated May 9, 2005, submitted as App. to Pet.'s Mem. Petitioner's filings do not include a copy of the response received from this court. The records of this court, however, reflect that on May 13, 2005, the pro se clerk sent petitioner a standard reply informing him that the court could not act upon his submission, and enclosing the paperwork required for filing a petition for habeas corpus pursuant to 28 U.S.C. § 2254.

Meanwhile, petitioner had filed a motion for post-conviction relief in state court under C.P.L. § 440.10 on February 4, 2005. The application was denied by the trial court on June 21, 2005, and the Appellate Division denied leave to appeal that denial on March 16, 2006. See Decision & Order, submitted as Ex. I to Resp.'s Mem. Petitioner then filed a petition for writ of coram nobis on April 27, 2006, which was denied by the Appellate Division on October 17, 2006, and leave to appeal that denial was denied by the New York Court of Appeals on February 20, 2007. See People v. McCowen, 8 N.Y.3d 882 (2007). Petitioner then filed the instant petition on August 3, 2007.

## DISCUSSION

### A. AEDPA Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides, "[a] one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1)(A). The one-year statute of limitations runs from the date on which the latest of the following four events occurs:

(A) the direct review of the petitioner's conviction is final;

(B) an unconstitutional or illegal state-created impediment that precluded the petitioner from filing his petition was removed;

(C) a new constitutional right was announced by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the factual predicate for the petition was – or could have been – discovered by the petitioner through exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

Generally, the statute of limitations runs from the date on which a petitioner's conviction became final. 28 U.S.C. § 2244(d)(1)(A). A petitioner's conviction is considered final when direct

4

appellate review in the state court system is complete and either certiorari proceedings in the United States Supreme Court are completed or, if no petition for certiorari is filed, the expiration of the time to seek direct review via certiorari has expired. Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001). The statute also provides that the one-year limitations period is tolled while state post-conviction motions are pending. 28 U.S.C. § 2244(d)(2). A properly filed motion for post-conviction review in state court is a state remedy that tolls the one-year statute of limitations. See Pratt v. Greiner, 306 F.3d 1190, 1191 (2d Cir. 2002). Finally, a habeas petitioner may be entitled to equitable tolling of the one-year statute of limitations under "extraordinary or unusual circumstances." See Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000).

In this case, the New York Court of Appeals denied petitioner's application for leave to appeal on March 30, 2004. See People v. McCowen, 2 N.Y.2d 743 (2004). His conviction thus became final when his time to file a petition for certiorari with the United States Supreme Court expired, 90 days later, on June 28, 2004. On February 4, 2005, petitioner filed his first § 440.10 motion in New York State court, 221 days after the one-year statute of limitations had began to run. The state does not dispute that this filing tolled the statute of limitations until March 16, 2006, when the Appellate Division denied leave to appeal the trial court's denial of the § 440.10 motion for post-conviction relief. See Resp. Mem. at 4.

Forty-one (41) days after the March 16, 2006 denial, on April 27, 2006, petitioner filed an application for a writ of coram nobis in the Appellate Division, again tolling the statute of limitations. The state does not dispute that this filing tolled the one-year statute of limitations until February 20, 2007, when the Court of Appeals denied leave to file an appeal from the Appellate Division's denial of the application. See id. Petitioner then filed the instant petition on August 3,

2007, 163 days after the tolling of the statute of limitations had ceased on February 20, 2007. (Dkt. No. 1). Thus, after deducting statutory tolling, petitioner filed the instant petition 425 days after his conviction became final, rendering his petition untimely by 60 days absent equitable tolling.

Petitioner does not appear to contest this calculation, protesting, rather, that he and his appellate counsel did not receive notice of the Court of Appeals' order of March 30, 2004 until August 5, 2004, 128 days after that decision was actually issued and 38 days after the one-year statute of limitations had began to run. See Pet. at 14. The court construes this as an argument that the statute of limitations should be equitably tolled to render his petition timely. For the reasons stated below, however, the circumstances of this case do not warrant equitable tolling.

## B. Equitable Tolling

The Second Circuit has held that equitable tolling is permissible under AEDPA. See Smith, 208 F.3d at 17. The burden of establishing that equitable tolling is appropriate is on the habeas petitioner. Hizbullahankhamon v. Walker, 255 F.3d 65, 75 (2d Cir. 2001). To meet this burden, a petitioner must establish that (1) "he acted with reasonable diligence during the period he wishes to have tolled," Smaldone v. Senkowski, 273 F.3d 133, 138 (2d Cir. 2001) (quoting Smith, 208 F.3d at 17); (2) "extraordinary circumstances" prevented him from making a timely petition, Smith, 208 F.3d at 17; and (3) those extraordinary circumstances actually *caused* defendant's untimeliness, in other words, that there is "a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (internal citations omitted) (emphasis in original). See also Hizbullahankhamon, 255 F.3d at 75 ("[i]n a case

6

where the alleged extraordinary circumstances ceased early in the limitations period, we inquire whether petitioner diligently pursued his application in the remaining time"); Fisher v. Johnson, 174 F.3d 170, 716 (5th Cir. 1999) (to be entitled to equitable tolling, petitioner must show that he acted diligently from the time the extraordinary circumstance ended through the time remaining to file his habeas petition).

*1. Reasonable Diligence*

Petitioner has made ample showing of reasonable diligence throughout the period prior to his August 5, 2004 receipt of notice that the New York Court of Appeals had denied his request for leave to file an appeal. As discussed previously, petitioner sent at least one letter to the Clerk of the New York Court of Appeals and two letters to his attorney inquiring as to the status of his case. These letters, submitted to this court with petitioner's memorandum, suffice to establish that petitioner acted with the requisite diligence throughout the initial period until his receipt of actual notice of the Court of Appeals' denial of his application.

*2. "Extraordinary Circumstances"*

Petitioner appears to argue that the delay in receiving notification of the New York Court of Appeals' denial of his petition for leave to appeal constitutes "extraordinary circumstances." It is dubious that petitioner's counsel's failure to receive and communicate notice of the denial constitutes the "rare and extraordinary circumstances", Smith, 208 F.3d at 17, necessary to toll the AEDPA statute of limitations.

Although the Second Circuit has held that attorney conduct and official action or inaction can be so egregious and culpable as to amount to "extraordinary circumstances" warranting equitable

7

tolling of the AEDPA statute of limitations, the record petitioner has adduced fails even to establish that attorney or official negligence was responsible for the lapse in receipt of notice, much less that the delay was caused by the type of serious misfeasance that has been held to establish this element. For example, the circuit has held that an attorney's deliberate failure to file a post-conviction motion after petitioner's explicit request that he do so constitutes extraordinary circumstances for purposes of equitable tolling. See Baldayaque v. United States, 338 F.3d 145, 152 (2d Cir. 2003). See also Torres v. Barnhart, 417 F.3d 276, 280 (2d Cir. 2005) (remanding for evidentiary hearing to establish whether equitable tolling of time to file social security appeal is required in the case of a "*pro se* claimant who nonetheless did everything possible to try to assert his claim in timely fashion and was only stymied from so doing by being seriously misled by an attorney in whom he placed his trust."). By contrast, less culpable conduct, such as a lawyer's misunderstanding of the AEDPA statute of limitations, will not normally be considered extraordinary circumstances. See Smaldone v. Senkowski, 273 F.3d 133, 138 (2d Cir. 2001); see also Geraci v. Senkowski, 211 F.3d 6, 9 (2d Cir. 2000) (mistake by counsel as to time remaining to file a habeas petition is not an extraordinary circumstance for purposes of equitable tolling).[1] Because there is no evidence in the record establishing that petitioner's counsel's actions here were in any way culpable or negligent, much less outrageous or incompetent, there is nothing about counsel's conduct that warrants tolling.

Similarly, the Second Circuit has held that certain wrongful acts by state officials, such as the intentional confiscation of a prisoner's court papers shortly before the time to file expired, see

---

[1] See also Brigian v. Artuz, 37 Fed. Appx. 559, 561-62 (2d Cir. 2002) (unpublished opinion) (noting that "it is far from clear" that an attorney's failure to file client's habeas petition and to return client's court documents constitutes "extraordinary circumstances").

Valverde v. Stinson, 224 F.3d 129, 133 (2d Cir. 2000), constitute extraordinary circumstances. Here, however, there is nothing in the record to indicate that the Clerk of the New York Court of Appeals, in failing to successfully notify petitioner and his lawyer of the decision on petitioner's leave to appeal, engaged in any form of misconduct, much less misconduct so egregious as to satisfy the standard of extraordinary circumstances.[2]

In short, petitioner's papers fail to allege the type of misconduct that has been held to constitute extraordinary circumstances warranting equitable tolling of the AEDPA statute of limitations. Even assuming, however, that petitioner could establish this essential requirement of equitable tolling, as discussed below, he has failed to demonstrate that there is the necessary causal connection between the delay in his receipt of notice and the extent of his untimeliness in filing his petition.

### 3. Causal Connection Between "Extraordinary Circumstance" and Untimeliness

Equitable tolling must ultimately be denied because the record in this case establishes that petitioner failed to act diligently to timely file his habeas petition after receiving notice of the New York Court of Appeals' denial of his leave to appeal. Petitioner's lack of due diligence in this respect thus severed the required causal connection between the failure to receive notice and the petitioner's untimeliness. See Valverde, 224 F.3d at 134.

Second Circuit case law establishes that, even assuming that a petitioner faces extraordinary circumstances at the beginning of the limitations period, if he nonetheless has remaining a sizeable

---

[2] Cf. Brigian, 37 Fed. Appx. at 561-62 (noting that "it is far from clear" whether petitioner's inability to obtain copies of his legal documents from the court, after the originals of the papers were not returned by petitioner's attorney, constitutes "extraordinary circumstances.").

9

window of opportunity to file a timely habeas corpus petition after the extraordinary circumstances cease, his failure to act diligently within that window will preclude equitable tolling. In Hizbullahankhamon, the Second Circuit held that no equitable tolling was warranted because, assuming arguendo that the petitioner faced extraordinary circumstances for the first 22 days of the running of the statute of limitations, he waited more than 381 days, after accounting for all other claimed periods of equitable and statutory tolling, between the cessation of the extraordinary circumstances and the filing of the petition for habeas corpus, ultimately rendering his petition at least 16 days late. See Hizbullahankhamon, 255 F.3d at 75.

In Hizbullahankhamon, the petitioner was in solitary confinement and without access to his legal files on the day the limitations period began to run, April 25, 1996. He was then released 22 days later, on May 16, 1996, with 343 days left to run in the statute of limitations. The court denied equitable tolling of the statute of limitation for the 22 day period, noting that "even assuming that the challenged deprivation constituted an 'extraordinary circumstance' [...], petitioner [could not] show that this extraordinary circumstance *prevented* him from filing in a timely habeas petition." See id. at 76 (emphasis in original). The court continued, "it can't plausibly be said that, but for those 22 days at the very beginning of the one-year limitations period [...], he would have been able to file his petition [in time]." Id. See also Donovan v. Maine, 276 F.3d 87, 93-94 (1st Cir. 2002) (noting, in dicta, that petitioner would not be entitled to equitable tolling despite the state's failure to provide him a copy of a transcript of the evidentiary hearing, when he had seven weeks left in the limitations period on the day he received the transcript, and failed to "adequately show[] why that interval was insufficient to permit timely filing."); Urena v. United States of America, No. 03-Civ-6722 (JFK), 2005 WL 1653888, at *2-3 (S.D.N.Y. Jul. 13, 2005) (no equitable tolling under § 2255, in part,

because although attorney failed to notify petitioner of denial of petition for writ of certiorari in a timely fashion, petitioner actually received notice 5 months before the end of the statutory period); Williams v. Breslin, No. 03-Civ-1848 (RWS), 2004 WL 2368011, at * 7 (S.D.N.Y. Oct. 20, 2004) (assuming that counsel's misinformation with respect to possibility of filing a petition for writ of habeas corpus constituted "extraordinary circumstances," equitable tolling denied in part because the misinformation "transpired before the one-year limitations period [...] had begun to run" and petitioner failed to show that it *prevented him* from filing a timely petition).[3]

In this case, on the day petitioner's limitations period began to run, June 28, 2004, he was unaware of the denial of leave to appeal his conviction to the New York Court of Appeals. Petitioner acknowledges, however, that he was advised of that denial on August 5, 2004, only thirty-eight (38) days into the running of the one-year statutory period. Thereafter, he waited 183 days to file his first 440 motion in state court, 42 days after the ultimate denial of that motion to file a petition for writ of coram nobis, and 164 days after the denial of that motion to file a petition for writ of habeas corpus here. In light of these lengthy, unexplained delays, as in Hizbullahankhamon, it cannot be said that but for petitioner's failure to receive notice of the Court of Appeals' decision 38 days after the limitations period began to run, petitioner would have been able to timely file his habeas petition. Indeed, from the time petitioner received actual notice of the Court of Appeals' decision, and after accounting for all periods of statutory tolling, a total of 389 days elapsed before petitioner filed his

---

[3] See also Lopez v. United States, 180 Fed. Appx. 305 (2d Cir. 2006) (no equitable tolling when petitioner waited almost one year to file a habeas petition after receipt of supposedly missing trial transcripts and provided no explanation for this delay).

petition for writ of habeas corpus. Petitioner has proffered no reason for equitably tolling the statute of limitations during those periods.

Also relevant in assessing petitioner's diligence during the time that elapsed between the end of the allegedly extraordinary circumstance and the filing of his habeas petition is whether petitioner's product demonstrates that the delay is reasonably attributable to the amount of preparation required to file the petition. In one case, for example, petitioner claimed he was entitled to equitable tolling because he lost his legal papers three months before the expiration of the statute of limitations, but tolling was denied, in part, because the habeas petition "required virtually no preparation because it merely raises the same claims presented on direct appeal and does so merely by citing petitioner's Appellate Division briefs." Quezada v. Artuz, No. 98-Civ-2593 (NG), 2001 WL 1262402, at *2 (E.D.N.Y. Oct. 17, 2001); see also Rhodes v. Senkowski, 82 F.Supp.2d 160, 170-71 (S.D.N.Y. 2000) (although repeated hospitalizations and bouts of mental illness prevented petitioner from timely filing habeas petition, the district court noted that "[a]nother reason that equitable tolling is inappropriate here is that [petitioner] waited almost eight years after his conviction became final to file his current habeas petition, but his supporting brief merely copies portions of his brief on direct state appeal.). Cf. Morrison v. Ercole, No. 05-Civ-5246 (JFB), 2007 WL 2362206, at *7 (E.D.N.Y. Aug. 15, 2007) (the death of petitioner's attorney and his inability to obtain the papers his attorney had prepared in connection with the anticipated filing of the habeas petition did not explain his delay in filing the habeas petition, in part, because it "merely included the points raised by him in his direct appeal").

In this case, as in the cases cited above, it is readily apparent that petitioner required almost no time to prepare and file his initial petition for habeas corpus. In his original petition, he gave

ample notice of his exhausted claims in a mere seven paragraphs, each of which briefly summarized the points that he had previously developed in detail in his pro se supplemental brief filed in his original appeal to the Appellate Division, and his § 440.10 and coram nobis petitions. See Pet. at 15-19. Two and a half months after he filed the original petition he then filed a detailed supporting memorandum of law. See Dkt. No. 11. Given that his initial petition required only minimal preparation, and that he proffered no other explanation for the delay, petitioner cannot justify waiting more than 160 days between the conclusion of the last state court proceeding and the filing of his habeas petition. This lengthy delay cannot be characterized as reasonably diligent. Cf. Zarvela v. Artuz, 254 F.3d 374, 382 (2d Cir. 2001) (noting that 30 days is a reasonable time for a petitioner to begin state court proceedings to exhaust habeas claims and is also a reasonable time to return to federal court after the claims have been exhausted).

## CONCLUSION

For the foregoing reasons, petitioner's request for equitable tolling is denied. The petition for habeas corpus must therefore be dismissed as untimely.[4] No certificate of appealability is granted as this petitioner presents no "substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253. The petitioner has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. See id. The Clerk of the Court is instructed to enter judgment accordingly.

SO ORDERED.

                                                s/ Judge Allyne R. Ross

                                                Allyne R. Ross
                                                United States District Judge

Dated: January 10, 2008
       Brooklyn, New York

---

[4] Subsequent to the filing of his original petition for habeas corpus, petitioner submitted letters to this court requesting leave to amend his original petition to include additional grounds for relief. See Dkt. Nos. 4, 12. Because petitioner's original filing is untimely, any additional claims would also be untimely, even if they "related back" to the claims contained in the original petition, under the doctrine set forth in Mayle v. Felix, 545 U.S. 644 (2005).

**Service List:**

Lawerence McCowen, <u>pro se</u>

01A2394
Attica Corr. Facility
639 Exchange Street
Attica, NY 14011